UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION,

                               Plaintiff,

                               Case # 18-CV-6725-FPG

v.

                               DECISION AND ORDER

BUS-LET, INC., et al.,

                               Defendants.
_____

## INTRODUCTION

    In October 2018, Xerox Corporation sued several allegedly interrelated entities for breaches of various contracts and unjust enrichment. ECF No. 1. In December 2018, Defendants—Bus-Let, Inc., Rocket Mail, LLC, Post Haste Mailing Services, Inc., Mass Mail, LLC, Eventide Management Partners, LLC, and Benson Smith—answered Xerox's amended complaint and filed counterclaims for breach of contract, fraud in the inducement, tortious interference with contract, and unjust enrichment. ECF No. 12. On January 11, 2019, before discovery began, Xerox filed a joint motion for partial summary judgment on some of its claims and motion to dismiss Defendants' counterclaims. ECF No. 16. Defendants oppose the motion. ECF No. 23. Having reviewed the relevant materials, the Court finds oral argument unnecessary to decide the motion. For the reasons that follow, Xerox's motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

I. **Motion for Partial Summary Judgment**

    a. **Legal Standard**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

    b. **Background**

The following facts are from Xerox's statement of undisputed facts, unless otherwise noted.[1] This case concerns four contracts between Xerox and Defendants. The first contract was an "equipment finance lease agreement" between Xerox and Bus-Let, which the parties executed in December 2012. ECF No. 16-1 ¶ 1. Under the agreement, Xerox leased Bus-Let an "iGen4

---

[1] With its motion, Xerox submitted a statement of undisputed facts in accordance with Local Rule 56(a)(1). Defendants did not submit a corresponding response to Xerox's statement. *See* Loc. R. Civ. P. 56(a)(2) (requiring the party opposing summary judgment to respond "to each numbered paragraph in the moving party's statement"). Accordingly, consistent with the Local Rules, Xerox's statement of facts are deemed admitted for purposes of its motion except where specifically controverted by the evidence that Defendants submitted. *See id.*; *see also Xerox Corp. v. JCTB Inc.*, No. 18-CV-6154, 2018 WL 5776423, at *3 (W.D.N.Y. Nov. 2, 2018).

Color Printing Press" and an "iGen4 FreeFlow Print Server." *Id.* In February 2014, after Bus-Let defaulted on its payment obligations, the parties modified the agreement in part. *Id.* ¶¶ 4-5.

The finance lease agreement (as modified) contained a "hell or high water" clause, which provides:

> THIS AGREEMENT CANNOT BE CANCELED OR TERMINATED EXCEPT AS EXPRESSLY PROVIDED HEREIN. YOUR OBLIGATION TO MAKE ALL PAYMENTS, AND TO PAY ANY OTHER AMOUNTS DUE OR TO BECOME DUE, IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO DELAY, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM OR RECOUPMENT FOR ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S PERFORMANCE OF ITS OBLIGATIONS HEREUNDER.

ECF No. 16-2 at 22. The parties also agreed to treat the contract as a "finance lease" under "Article 2A of the Uniform Commercial Code," and Bus-Let waived all rights and remedies "as a lessee under Article 2A." *Id.* Under Article 2A, a lessee's obligation to make payments under a finance lease is "irrevocable" and "not subject to cancellation, termination, modification, repudiation, excuse, or substitution." *Xerox Corp. v. JCTB Inc.*, No. 18-CV-6154, 2018 WL 5776423, at *5 (W.D.N.Y. Nov. 2, 2018). In addition, while Xerox agreed to maintain the leased equipment, the "exclusive remedy for Xerox's failure to provide Maintenance Services" was to "replace the Equipment with an identical model or . . . another model with comparable features and capabilities." ECF No. 16-2 at 19.

Bus-Let made payments under the modified finance lease agreement until February 2018, at which time it defaulted on its obligations. ECF No. 16-1 ¶ 27. Xerox estimates that its damages for Bus-Let's breach of this agreement is $244,146.19. *Id.* ¶ 39.

The second contract, executed in September 2013, was an equipment finance lease agreement between Xerox and Post Haste. *Id.* ¶ 40. Under that agreement, Xerox leased Post Haste a "XC 1000P Color Printer" and an "EX 1000 Fiery Print Server." *Id.* ¶ 40. As with Bus-

3

Let's finance lease agreement, Post Haste's finance lease agreement contained a "hell or high water" clause, incorporated Article 2A of the UCC, and limited the remedy for Xerox's failure to provide maintenance services to replacement equipment. *See* ECF No. 16-2 at 86-87. Post Haste made payments until April 2018, when it defaulted on its obligations. ECF No. 16-1 ¶¶ 54, 57. Xerox calculates that Post Haste owes $101,349.38 for its breach of the finance lease agreement. *Id.* ¶ 66.

In response to Xerox's motion, Defendants submitted the affidavit of Defendant Smith, an officer of Post Haste and a partner in Eventide. *See* ECF No. 24. He states that the equipment Xerox installed pursuant to Post Haste's lease agreement "consistently produced poor quality product and experienced down times for unplanned repairs and maintenance." *Id.* ¶ 9. Xerox also failed to "perform its obligations under the service agreement." *Id.* ¶ 10. Although Xerox acknowledged the poor print quality and "offered credits" to Post Haste, it became necessary to make other arrangements in order to print materials. *Id.* ¶¶ 11, 12. Smith states that, as a result, "we lost all of our profit margin which ultimately led to the financial failure of the company." *Id.* Smith also asserts that he has "personal knowledge" that Xerox "never attempted to collect late fees from its customers," notwithstanding contrary language in the contracts. He states, "Upon information and belief it was XEROX practice to work in good faith with their customers to resolve problems." *Id.* ¶ 13.

The third contract, executed in September 2015, was a maintenance agreement between Mass Mail and Xerox. ECF No. 16-1 ¶ 67. Under the agreement, Xerox agreed to provide maintenance services to Mass Mail with respect to a Nuvera Copier. *Id.* The agreement specified that the exclusive remedy for Xerox's failure to provide such services was replacement equipment. ECF No. 16-2 at 132. After two years, the agreement was renewed. ECF No. 16-1 ¶ 69. In

January 2018, Mass Mail stopped making payments as required. *Id.* ¶ 79. Xerox estimates that its damages are $15,532.58. *Id.* ¶ 88.

The fourth contract, executed in October 2015, was a maintenance agreement between Xerox and Bus-Let. *Id.* ¶ 89. Like the Mass Mail maintenance agreement, this agreement stated that if Xerox failed to provide maintenance services, Bus-Let's "exclusive remedy" was that Xerox would replace the faulty equipment. ECF No. 16-2 at 163. Bus-Let stopped making payments and defaulted under the agreement in December 2017. ECF No. 16-1 ¶ 101. Xerox claims that its damages are $137,985.45. *Id.* ¶ 110.

Xerox's first four claims against Defendants—all for breach of contract—correspond to the four contracts described above. *See* ECF No. 5 at 16-23. In its complaint, Xerox does not seek to hold only the contracting defendant liable; it contends that Defendants are all interrelated and should be held jointly and severally liable for the contract breaches. *See id.* at 1-2, 6-8. Specifically, Xerox alleges that Eventide owns and controls the other entities and that all of the entities commingle funds, operate out of the same offices, and are managed not as distinct companies but as a single enterprise.

Nevertheless, in the present motion Xerox only seeks summary judgment against the contracting party with respect to each contract breach—*i.e.*, against Bus-Let on Counts I and IV; against Post Haste on Count II; and against Mass Mail on Count III.

    **c. Analysis**

Xerox argues that summary judgment is proper on its breach of contract claims against the contracting defendants, despite the early stage of this litigation, because the "undisputed facts conclusively establish that [those] defendants defaulted on their payment obligations . . . and that

Xerox is entitled to recover liquidated damages in accordance with the . . . agreements." ECF No. 16-3 at 7.

Defendants oppose Xerox's motion. Defendants generally argue that Xerox did not adequately maintain the equipment under the agreements and stopped providing any maintenance once Defendants withheld payment. Although they have not submitted an opposing statement of facts under Local Rule 56, Defendants assert there are genuine issues of material fact that preclude summary judgment, including (1) whether the other defendants are "mere continuations of Bus-Let" such that they can be held liable for Bus-Let's debts;[2] (2) whether Xerox pressured or fraudulently induced Smith to sign the finance lease agreement on Post Haste's behalf; and (3) whether Smith "knew, or should have known, that Post Haste had . . . ceased its business operations[] at the time he signed" the agreement on Post Haste's behalf. ECF No. 23 at 6.

Before addressing the merits, the Court discusses a preliminary matter. Citing Federal Rule of Civil Procedure 56(d), Defendants assert that Xerox's motion is premature and that the Court should defer consideration of the motion until discovery has taken place. *See* Fed. R. Civ. P. 56(d)(1) (permitting a court to defer consideration of a summary judgment motion where the nonmovant shows that it cannot yet "present facts essential to justify its opposition"). Defendants' argument fails for two reasons. First, Defendants have not submitted an affidavit to support their request, which by itself is "sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Jones v. Bryant Park Market Events, LLC*, 658 F. App'x 621, 626 (2d Cir. 2016) (summary order). Second, and more importantly, Defendants' claimed need for discovery is largely vague and conclusory. *See* ECF No. 23 at 7-8. The only discovery they specifically identify is possible "oral and written communications" by Xerox which could show that Xerox

---

[2] This fact is irrelevant for purposes of the present motion, since Xerox is not presently seeking summary judgment on a successor-liability theory against any defendant. *See* ECF No. 16-3 at 7 n.1.

fraudulently induced them to execute the agreements. But a "party may not use Rule 56(d) as a means of finding out whether it has a case." *DePaola v. City of New York*, 586 F. App'x 70, 71 (2d Cir. 2014) (summary order). Ultimately, these are straightforward breach of contract claims, and Defendants have not persuaded the Court that further discovery is necessary to resolve them.

Turning to the merits, "[u]nder New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."[3] *Queens Ballpark Co., LLC v. Vysk Comm'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016). However, the adequacy of the plaintiff's performance becomes "irrelevant" where there is a "hell or high water" clause in the agreement. *Wells Fargo Bank, N.A. v. BrooksAmerica Mortg. Co.*, 419 F.3d 107, 110 (2d Cir. 2005). A "hell or high water" clause is one in which a person agrees "to make payments regardless of the other party's performance." *Xerox Corp. v. RP Digital Servs., Inc.*, 232 F. Supp. 3d 321, 324 (W.D.N.Y. 2017). In New York, these clauses are "typically enforceable." *Id.*; *see also BrooksAmerica*, 419 F.3d at 110; *Xerox Corp. v. Graphic Mgmt. Servs. Inc.*, 959 F. Supp. 2d 311, 318 (W.D.N.Y. 2013).

The Court concludes that Xerox is entitled to partial summary judgment on Counts I, III, and IV, but is not entitled to summary judgment on Count II. Regarding the first contract with Bus-Let (Count I), it is undisputed that Xerox and Bus-Let had an equipment finance lease agreement and that Bus-Let breached that agreement when it failed to make timely payments. In addition, Defendants' claim that Xerox failed to maintain the leased equipment is immaterial: because there is a "hell or high water" clause in the lease agreement, Xerox's performance is irrelevant to its entitlement to judgment as a matter of law. *See BrooksAmerica*, 419 F.3d at 110.

---

[3] The parties do not seem to dispute that New York law governs by virtue of the agreements' choice-of-law provisions. *See* ECF No. 16-2 at 22, 88, 133, 164; *see also JCTB Inc.*, 2018 WL 5776423, at *3-4.

Similarly, as to Counts III and IV, the undisputed facts establish that (1) Xerox had maintenance agreements with Mass Mail and Bus-Let, (2) these agreements gave Xerox the right to collect past-due and future payments and limited the remedy for Xerox's breach to replacement equipment, and (3) Bus-Let and Mass Mail defaulted on their payment obligations under those agreements. *See* ECF No. 16-1 ¶¶ 67, 79, 89, 101. Insofar as Defendants do not raise any argument to preclude application of the agreement's plain language, Xerox has established its entitlement to relief. Summary judgment is therefore proper on Counts III and IV as to Mass Mail and Bus-Let, respectively.

As for damages on Counts I, III, and IV, Defendants do not advance any argument challenging Xerox's calculations of its principal damages.[4] *See Mattison v. Potter*, 515 F. Supp. 2d 356, 370 (W.D.N.Y. 2007) (noting that a party who fails to address a claim in opposition to summary judgment is deemed to have abandoned that claim). The only defense that Defendants even arguably raise with respect to damages appears in Smith's affidavit, wherein he avers that "in practice XEROX never attempted to collect late fees from its customers." ECF No. 24 ¶ 13. But in their brief, Defendants do not develop an argument based on this statement. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Accordingly, summary judgment against Bus-Let and Mass Mail is proper both as to liability and as to Xerox's requested damages.

However, the Court is not prepared to grant summary judgment on Count II, which concerns the equipment finance lease agreement executed by Post Haste. As noted above, Defendants suggest that Xerox may have pressured or fraudulently induced Benson Smith to sign

---

[4] At this time, the Court need not address Xerox's request for attorney's fees and costs, which Xerox intends to request later in this action. *See* ECF No. 16-3 at 19-20.

the agreement on Post Haste's behalf. The Court need not address Defendants' allegation of duress, as Smith's own affidavit does not mention that and Defendants do not otherwise provide evidence to support such a claim.

As for fraudulent inducement, fraud is an affirmative defense to a breach of contract claim. *See Sotheby's Fin. Servs., Inc. v. Baran*, No. 00 Civ. 7897, 2003 WL 21756126, at *6 (S.D.N.Y. July 29, 2003) ("It is well settled that under New York law, a contract is voidable when it is the product of fraud."). From what the Court can glean from their materials, Defendants appear to claim that the equipment finance lease agreement executed by Post Haste was actually intended to benefit Rocket Mail, a separate defendant entity. *See* ECF No. 24 at 1-2. But, because Rocket Mail did not have "established credit" with Xerox, it could not undertake the transaction. *Id.* at 2. To get around this, Lou Richardson (a Xerox representative) and Scott Porter (a third-party vendor) "structured the purchase through . . . Post Haste" and encouraged Smith to execute the agreement on Post Haste's behalf. *Id.* The problem with this was that Post Haste had been dissolved before the agreement was executed, and Xerox now seeks to hold Smith and other defendants liable for Post Haste's default on the theory that Smith "knew or should have that Post Haste had been dissolved" when he signed the agreement. ECF No. 5 at 8. It seems that the alleged fraud consists of Richardson's representation that it was permissible to structure the transaction in this manner. *See* ECF No. 12 at 19 (alleging that Defendants relied on Richardson's representations "regarding the entity that should sign the agreement at issue" and that they "would not have signed the agreement on behalf of Post Haste" absent the representation).

At this juncture, Defendants do not raise a viable defense of fraud to defeat summary judgment on Count II. In the first place, the Court is not entirely clear what Defendants' fraud theory is, as they do not explain it in their opposition memorandum. And the only evidence they

9

offer in support of their claim is Smith's affidavit, which does not demonstrate fraud or otherwise illuminate the circumstances of the Post Haste transaction. Standing alone, that affidavit does not provide the strong proof necessary to establish fraud. *See 720 Lex Acquisition LLC v. Guess? Retail, Inc.*, No. 09 Civ. 7199, 2011 WL 5039780, at *5 (S.D.N.Y. Oct. 21, 2011) ("[A]t the summary judgment stage, a party must proffer enough proof to allow a reasonable jury to find by clear and convincing evidence the existence of each of the elements necessary to make out a claim for fraud in the inducement.").

Nevertheless, the Court declines to grant summary judgment on Count II against Post Haste. As the Court discusses below, Defendants' counterclaim for fraud in the inducement is subject to dismissal for failure to state a claim. Because the Court intends to give Defendants an opportunity to amend that counterclaim, it would be premature to grant summary judgment in Xerox's favor when there may be a viable defense. To be sure, Xerox has articulated persuasive grounds why Defendants' fraud claim fails, ECF No. 25 at 11-12, and Defendants have not presented a robust opposition. But the early stage of this litigation and the lack of prejudice to Xerox (given that the litigation will proceed regardless) counsels in favor of deferring judgment on this claim. It is worth emphasizing that pre-discovery summary judgment should be granted "only in the clearest of cases." *Kleinman v. Vincent*, No. 90 Civ. 5655, 1991 WL 2804, at *1 (S.D.N.Y. Jan. 8, 1991).

Accordingly, Xerox's motion for partial summary judgment is granted as to Bus-Let on Counts I and IV and as to Mass Mail on Count III. The motion is denied without prejudice as to Post Haste on Count II. Xerox may renew their motion for summary judgment on Count II once Defendants have amended their fraud counterclaim.

## II. Motion to Dismiss Counterclaims

### a. Legal Standard

"A motion to dismiss counterclaims is governed by the well-known standard for determining a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 360 (W.D.N.Y. 2014). A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the non-moving party's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted). Along with the facts alleged in the complaint itself, a court may consider any items incorporated by reference in or integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Therefore, the Court considers the four contracts in resolving the motion. *See Slip-N-Slide Records, Inc. v. Island Def Jam Music Grp.*, No. 13-CV-4450, 2014 WL 2119857, at *1 (S.D.N.Y. May 21, 2014).

### b. Background

Defendants allege four counterclaims: breach of contract, fraud in the inducement, tortious interference with contract, and unjust enrichment. They allege that the equipment Xerox supplied and maintained was "so unreliable" that Defendants "lost hundreds of thousands of dollars in

profits due to the inability to contract for print jobs with outside customers." ECF No. 12 at 18. When they would call Xerox to service the equipment, the "service was performed negligently, or not at all." *Id.* Moreover, Xerox "simply stopped maintaining the units . . . once Defendants withheld payment." *Id.* at 19. Defendants argue that "Xerox's failure to properly maintain the units . . . was a material breach of the agreements," thus entitling Defendants to relief. On the breach of contract claim, Defendants request $960,000 in damages, which they attribute to lost profits.

Defendants' claim for fraud in the inducement concerns Lou Richardson's alleged representation that it was permissible for Smith to execute an equipment finance lease agreement on Post Haste's behalf despite Post Haste being dissolved. *Id.* Defendants allege that absent their reasonable reliance on Richardson's representation, they would "not have signed the agreement on behalf of Post Haste." *Id.* They also allege that the equipment "failed to perform as promised" and "was not maintained as promised." *Id.* Defendants allege $240,000 in damages as a result of the fraud. *Id.* at 20.

The claim for tortious interference with contract relates to Defendants' allegation that Xerox failed to properly maintain the equipment at issue. Defendants allege that they "depended upon the performance of the [] equipment for their livelihood," which is "direct mail printing." *Id.* When the equipment failed, Defendants could not "fulfill contractual agreements to print direct mail for customers." *Id.* Xerox was aware of Defendants' need for "satisfactory equipment performance" and yet failed to properly maintain the equipment. *Id.* Furthermore, "[o]nce a dispute arose between Defendants and Xerox over performance on the one hand, and payment on the other, Xerox simply stopped maintaining the equipment." *Id.* Defendants allege that "Xerox knew or should have known that this intentional and punitive maintenance stoppage would

detrimentally impact Defendants' contractual obligations to its printing customers." *Id.* Defendants estimate that they lost "approximately $960,000 in profit from customer contracts that could not, due to Xerox's failures, be fulfilled." *Id.*

Defendants' final claim is for unjust enrichment. They allege that, under the agreements, Xerox received "the benefit of payments from Defendants in the approximate amount of $1,260,504.49." *Id.* at 21. That benefit came "at the expense of Defendants, who are without properly working equipment, without maintenance on the equipment, and in fact, without equipment at all, since Xerox has confiscated the equipment in a punitive measure to ensure that Defendants cannot possibly continue their business." *Id.* It is therefore "unconscionable and against equity to permit Xerox to have acquired the monetary benefit . . . without compensating Defendants for lost revenue due to Xerox's bad acts." *Id.*

Overall, Defendants seek $960,000, costs, and attorney's fees. *Id.*

### c. Analysis

The crux of Xerox's motion to dismiss is that all of Defendants' counterclaims are barred by the unambiguous language of the relevant agreements. For example, Defendants cannot seek damages for allegedly negligent maintenance because the exclusive remedy for Xerox's failure to provide maintenance under the agreements is replacement equipment. *See, e.g.*, ECF No. 16-2 at 86. Xerox cannot be faulted for removing or refusing to maintain the equipment once Defendants stopped making payments, because the agreements gave Xerox the right to do so. *See, e.g.*, *id.* at 87 (noting that "cessation of Maintenance Services" and removal of equipment are available remedies in case of default). Defendants cannot seek damages for lost profits because the agreements state that "neither party will be liable to the other for any special, indirect, incidental,

[or] consequential . . . damages arising out of or relating to this Agreement, whether the claim alleges tortious conduct (including negligence) or any other legal theory." *Id.*

Defendants respond that they have alleged facts to support the necessary elements of their claims, but they do not meaningfully address the unambiguous contract language that, on its face, bars their claims. *See* ECF No. 23 at 9-13. Defendants also ask that they be granted "leave to re-plead" should the Court find "that any of [their] counterclaims fail to contain the [necessary] specificity." ECF No. 23 at 14.

The Court concludes that Defendants' Answer fails to state viable counterclaims.

The problem with the breach of contract claim is Defendants' requested remedy: lost profits. Under the agreements, Xerox cannot be held liable for consequential damages that arise out of or relate to the agreements. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) ("Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements."). Thus, Defendants may not recover lost profits for Xerox's alleged breach of contract. *See Scott v. Palermo*, 233 A.D.2d 869, 870 (N.Y. App. Div. 1996) (stating that a provision limiting consequential damages "will be enforced so long as it is found not to be unconscionable").

Defendants' fraudulent inducement claim fails because it does not pass the more rigorous pleading standard of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a fraud claim must be pleaded "with particularity," in that it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (summary order). As discussed above, Defendants' fraud theory is not clear to the Court. Xerox's representative, Lou Richardson, allegedly represented that it was

14

permissible for Smith to execute the equipment finance lease agreement on Post Haste's behalf, but the Answer does not identify where and when that representation was made or how that statement was fraudulent. More is required to pass muster under Rule 9(b). *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (stating that the allegations supporting a fraud claim must "give rise to a strong inference of fraudulent intent").

A claim for tortious interference with contract consists of the following elements: "(i) the existence of a contract; (ii) defendants' knowledge of that contract; (iii) defendants' intentional inducement of a breach of that contract; (iv) a breach; (v) but for the defendants' actions, that contract would not have been breached; and (vi) damages." *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018). Defendants do not have a viable claim. They do not claim that Xerox induced a third party to breach a contract, but instead claim that Xerox's conduct caused them to breach their contracts with customers. *See Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 405 (S.D.N.Y. 2012) ("Plaintiff does not allege that any third party breached its contract, but instead alleges that *Plaintiff* breached its contracts with third parties as a result of Defendant's alleged breach of its contract with Plaintiff. Such an allegation is insufficient."). Furthermore, Defendants have not alleged the necessary intent—*i.e.*, that Xerox acted with the "purpose of inducing a breach of contract." *Conte*, 895 F.3d at 172 (internal brackets omitted). Defendants merely allege that Xerox "knew or should have known" that by refusing to properly maintain the equipment, Defendants would not be able to fulfill their customer contracts. ECF No. 12 at 20; *see Conte*, 895 F.3d at 172 ("It is clear that [a] . . . claimant [must] establish that the defendant purposefully intended to cause a contract party to breach a particular contract.").

As for unjust enrichment, it is well-established that the existence of a valid and enforceable contract precludes an unjust enrichment claim over the same subject matter. *See, e.g.*, *Beth Israel*

15

*Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006). This counterclaim therefore fails.

Finally, the Court addresses Defendants' request to amend their counterclaims. Although a party should normally be granted leave to amend its complaint after a successful motion to dismiss, a court need not grant leave where the amendment would be futile. *See Ray v. Samsung Elecs. Am., Inc.*, No. 15-CV-8540, 2016 WL 3406127, at *9 (S.D.N.Y. June 17, 2016). The defects with the counterclaims for breach of contract and tortious interference with contract are not mere pleading problems; the substantive causes of action are simply not viable. Without a specific proposal as to how they intend to cure the identified defects—which Defendants do not provide—the Court concludes that any amendment would be futile, and leave to amend is therefore denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that where the problem with a cause of action is "substantive," such that "better pleading will not cure it," repleading would be futile and leave to amend "should be denied").

The Court reaches a different conclusion with respect to the counterclaims for fraudulent inducement and unjust enrichment. Because Defendants have not sufficiently articulated their fraud claim, the Court cannot evaluate its substantive merits. It would thus be premature to conclude that any amendment would be futile, and so the Court will give Defendants an opportunity to amend that counterclaim. Consequently, it would also be premature to dismiss with prejudice the unjust enrichment claim—at least as it relates to the Post Haste transaction. Although "an unjust enrichment claim is precluded if a valid and enforceable contract governs the subject matter," such a claim may be viable "where the plaintiff alleges that the contract was induced by fraud and is voidable, or is otherwise invalid." *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 220 (E.D.N.Y. 2018) (internal brackets and quotation marks omitted).

Accordingly, the Court dismisses the counterclaims for breach of contract and tortious interference with contract with prejudice, and dismisses the counterclaims for fraudulent inducement and unjust enrichment without prejudice.

## CONCLUSION

For the reasons discussed above, Xerox's motion for partial summary judgment and to dismiss (ECF No. 16) is GRANTED IN PART and DENIED IN PART. Xerox is entitled to judgment as a matter of law against Bus-Let on Counts I and IV, and against Mass Mail on Count III. Xerox's motion for partial summary judgment is denied without prejudice as to Post Haste on Count II. Defendants' counterclaims for fraudulent inducement and unjust enrichment are dismissed without prejudice, and the remaining counterclaims are dismissed with prejudice. Defendants may amend their counterclaims for fraudulent inducement and unjust enrichment by July 19, 2019.

IT IS SO ORDERED.

Dated: June 17, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court